VANCE H. TURNER *v.* PLANTERS' LUMBER COMPANY.

[46 South., 399.]

FRAUDS, STATUTE OF. *Code* 1906, § 4775 (c). *Standing timber. Logs.*

A contract obligating the owner of standing timber to cut the same into logs and deliver them to a purchaser at an agreed place is not a sale of standing timber and not within Code 1906, § 4775 (c), providing that an action shall not be brought whereby to charge a defendant upon any contract for the sale of lands.

FROM the circuit court of Washington county.

HON. A. McC. KIMBROUGH, Judge.

Turner, appellant, was plaintiff in the court below; the lumber company, appellee, was defendant there. From a judgment in defendant's favor the plaintiff appealed to the supreme court. Defendant's demurrer to plaintiff's declaration was sustained by the court below on the idea that the contract sued upon was one for the sale of standing timber, real estate, and within the statute of frauds. The facts are stated in the opinion of the court.

*Hugh C. Watson,* for appellant.

While it would seem that the law is well settled in Mississippi to the effect that the sale of standing timber amounts to the conveying of such an interest in the land as necessitates the writing required by the statute of frauds, the case at bar is neither in spirit nor in effect like unto the adjudicated cases on that subject in this state. The case at bar falls within the language and holding of the two early and leading English cases on this subject. *Washburn v. Burrows,* 1 Wh. & G. (Exch.), 115; *Smith v. Surman,* 9 B. & C., 562.

In *Washburn v. Burrows,* Rolfe, B., for the court, said that where the vendor, who is the owner of the soil sells what is grown on the land, whether natural produce (*prima vestura*) such as timber, grass, herbage, or apples, or of annual produce of industry (*fructus industriales*) as corn, pulse, or the like, on the terms that he (the vendor) is to cut, or sever them from the land and then deliver them to the purchaser, the latter acquires thereby no interest in the soil "which in such cases is only in the nature of a warehouse for what is to him merely as a personal chattel."

In *Smith v. Surman,* it was held that where the owner of land agreed with another to cut timber from his own land and deliver the trees, when cut down or severed from the freehold, to the latter for stipulated prices, the statute of frauds did not

apply, and the particular agreement, in that case, being considered to have that effect in law was therefore held not to be within the statute.

In the case last above cited, the facts were very much like the facts in the case at bar. The defendant verbally agreed to buy a large quantity of timber, which at the time plaintiff was having cut down, most of it being then actually standing. The price was valued per foot, and no time was fixed for payment, and the defendant was to take and carry the timber away. In the case at bar the timber was valued per thousand, log measure, and the vendor was to both cut and carry away the timber and deliver it to the defendant at a designated place, to-wit: Dunleith Station. In the case at bar the vendee, the Planters' Lumber Company, had no right to enter upon the land where the timber stood and take the timber, and it was not contemplated that it was to do so; but on the other hand the vendor was to cut the timber, remove it from the land on which it was standing, and on which he had a valid timber contract, haul it to the station and deliver it on the siding. Clearly therefore there was no interest in the lands conveyed, or intended to be conveyed.

*Anderson & Voller,* on the same side.

We recognize that it has been the settled doctrine of this state for probably fifty years, that standing trees are a part of the land, and that to make a valid sale thereof, the contract must be in writing to meet the requirements of the statute of frauds. This doctrine was announced in the leading case in this state of *Harrell* v. *Miller,* 35 Miss., 700.

It was afterwards followed by our court in the case of *McKenzie* v. *Shows,* 70 Miss., 388, 12 South., 336, in which it was held that a deed to standing timber growing on a homestead made by the husband without the wife joining was void.

It was again followed by our court in the case of *Nelson* v. *Lawson,* 71 Miss., 819, 15 South., 798, wherein it was decided that a verbal contract for the sale of growing timber, though

valid as to the trees cut and paid for in execution of the contract, is void as to trees standing on the land although all the purchase money is paid.

It was again followed by our court in the case of *Walton* v. *Lowrey,* 74 Miss., 484, 21 South., 43, wherein it was decided that a parol agreement authorizing the cutting of standing timber on lands is within the statute of frauds.

It will be observed that the last of these cases was decided at the October term, 1896, of our court, more than eleven years ago, and the first was decided at the October term, 1858, about forty-nine years ago. This doctrine was formerly adhered to by the great weight of authority, but in modern times, under the changing conditions, the doctrine itself has also undergone a change, and now it seems that the weight of authority is that where the trees are sold in "the prospect of separation from the soil immediately or within a reasonable time" the sale is regarded as that of personal property, and is not required to be in writing under the statute of frauds.

We recognize that it is the policy of this state, as announced by our court in many decisions, that no exception will be allowed to be engrafted on our statute of frauds, which requires contracts for the sale of land, or of that which is a part of the land, to be in writing, in order to be valid. But even if this contract, as contended for by counsel for appellee, was for the sale of growing timber standing on and affixed to the land (which we emphatically deny), still, under the modern doctrine, to which we have just referred, the timber sold would be considered personal property, and therefore a contract for its sale need not be in writing.

In the case of *Hirth* v. *Graham* (Ohio), 19 L. R. A., 721, decided in 1893, the old doctrine that all sales of standing trees must be in writing to be valid, regardless of whether they are to be removed immediately or not, is adhered to.

To the same effect are a great number of the decisions referred to in the foot note to that case, although it will be seen

by reference to this note that many of the strongest courts of the land, even at that early date,. held to what we now consider the modern doctrine, that a sale of standing trees did not necessarily need to be in writing.

This modern doctrine to which we have referred is tersely stated as follows:

"*When regarded as personalty.*—The essential difference, however, between land and trees growing out of land, and the fact that the latter have in commercial transactions come to be regarded rather as personalty, have led the courts in many modern cases to draw a distinction; and it is now very generally recognized that a contract for the sale of trees, if the vendee is to have a right to the soil for a time, for the purpose of further growth and profit, is a contract for an interest in the land; but that where the trees are sold in the prospect of separation from the soil immediately or within a reasonable time, without any stipulation for the beneficial use of the soil, but with license to enter and take them away, it is regarded as a sale of goods only, and not within the fourth section of the statute." 28 Am. & Eng. Ency. of Law, 541 and note 8.

By reference to this note, it will be seen that a large number of the strongest courts of the land have adopted this view. As early as 1897, the Maryland Court of Appeals held that the parol sale of growing timber was not within the fourth section of the statute of frauds. *Leonard* v. *Medford,* 37 L. R. A., 449.

This view is demanded, it would seem, by the increased "commercial transactions" regarding the sale of timber that have grown up in the last ten or fifteen years.

*Percy & Moody,* for appellee.

Counsel in their brief rest their case practically upon the second count of the declaration, the contention being that the contract was for the sale of timber soon to be severed from the soil, and should be construed as a sale of personalty, not required to be in writing by the statute of frauds. The doctrine con-

tended for is clearly stated in 28 Am. & Eng. Ency. of Law, 541. "The essential difference, however, between land and trees growing out of land, and the fact that the latter have in commercial transactions come to be regarded rather as personalty, have led the courts in many modern cases to draw a distinction, and it is now very generally recognized that a contract for the sale of trees, if the vendee is to have the right to the soil for a time for the purpose of further growth and profit, is a contract for an interest in the land, but that where the trees are sold in the prospect of separation from the soil immediately or within a reasonable time, without any stipulation for the beneficial use of the soil, but with license to enter and take them away, it is regarded as a sale of goods only, and not within the fourth section of the statute." The note under this statement, in addition to the decisions referred to by counsel in their briefs, cites a number of cases from England, Connecticut, Indiana, Kentucky, Maine, Maryland, Massachusetts, Minnesota, New Jersey, New York, Pennsylvania, Rhode Island and Vermont, but the weight of authority, notwithstanding this, is adverse to the contention, and in no state in the union has the question been more definitely settled by repeated adjudications than in Mississippi. The language quoted from the encyclopedia tends to create the impression that the question is comparatively a new one, and the trend of modern decisions is to support the view that standing trees are personalty, and this we think has in a measure misled counsel. The question is not a new one, but one in regard to which conflicting decisions have been rendered by the courts of different states, and sometimes by the courts of the same state, for fifty years. In 1858 when our court delivered the opinion in *Harrell* v. *Miller,* 35 Miss., 700, one of the leading cases throughout the country on the subject, the court said: "Upon this question, there is much diversity of opinion, both in the decisions in England and in this country. Several of these decisions, from highly respectable sources, hold growing trees to be mere chattels, and that contracts for the sale of

them are not within the statute.   But many other cases hold
them to be parcel of the land, and within the statute, and this
opinion appears to be more in accordance with the principal,
and established legal distinctions."   The court then proceeds
in accordance with both reason and the weight of authority to
hold the agreement within the statute and void, because not in
writing.   There has been no tendency to deviate from, or to
modify, the ruling so enunciated.   WOODS, J., in *McKenzie* v.
*Shows,* 70 Miss., 388, 12 South., 336, says: "Under our own de-
cision referred to, the sale of the growing timber is a sale of the
part and parcel of the land itself.   It is a conveyance of an in-
terest in the land. . . .   The question cannot be regarded
as unsettled in our courts."   And in *Nelson* v. *Lawson,* 71
Miss., 819, 15 South., 798, which was an action of replevin,
the vendor seeking to recover from a sub-vendee trees which had
been cut in pursuance of a verbal contract, Judge CAMPBELL,
upholding the right of recovery said: "It is conceded to be the
law that, if the contract was executory, it conferred no right be-
cause not in writing."   And again in *Walton* v. *Lowrey,* 74
Miss., 484, 21 South., 243, the court in reviewing its pre-
vious decisions on the subject, summed the matter up by saying:
"It must be regarded as the definitely settled law in this state,
that parol agreements for the sale of growing timber, to be sev-
ered and removed from the land in future are void, and con-
fer no rights on the purchaser."   There is no distinction drawn
here or suggested as to contracts where the timber is to be sev-
ered within a definite time from the soil.   The language is un-
ambiguous.   "All contracts for the sale of timber to be cut in
the future are void," and these decisions are in accord with the
weight of authority in the United States, including many of
those states where timber often is the chief factor in giving value
to land, as is the case in many sections of our own state, to-wit:
Under the decisions cited in 28 Am. & Eng. Ency. of Law, 540,
Arkansas, Florida, Indiana, Iowa, Massachusetts, Michigan,
New York and Wisconsin.   An interesting collection of the au-

thorities on the subject is to be found in 19 L. R. A., 721. In the note to *Hirth* v. *Graham,* decided by the supreme court of Ohio, summing up the decisions, the editor in the note says: "It will be seen that a few English and American cases have treated a sale of trees to be immediately cut and taken away by the purchaser as a sale of personal property, and this is clearly the law in some jurisdictions; but, in the majority of cases, as in the main case above, the time of severance does not seem to have been regarded as material, and the general doctrine has been declared that a sale of standing timber is within the statute of frauds, as being a sale of an interest in land. And according to the suggestion of counsel that the question is a somewhat modern one, the court in the above case says: "Whether a sale of growing trees is a sale of an interest in or concerning land has long been a much controverted subject in the courts of England as well as in the courts of the several states of the union. The question having been differently decided in different jurisdictions, and by different courts, or at different times by the same court within the same jurisdiction." The court comes to the conclusion that "the courts of most of the American states, however, that have considered the question hold expressly that a sale of growing or standing timber is a contract concerning an interest in lands, and within the fourth section of the statute of frauds." And as the question was before that court for the first time, after reviewing all of the decisions on the subject, and considering the reasons therefor, the court decided, "to adopt that rule on the subject most conformable to sound reason," to-wit: that "the question whether such sale is a sale of an interest in or concerning land should depend not upon the intention of the parties, but upon the legal character of the subject of the contract, which in the case of growing timber is that of realty."

It seems to us that there can be no question about this contract being a contract for the sale of the standing timber on the two hundred and fifty acres of land. In addition to selling the

timber, the vendor undertook to cut it down, and put it on the cars at Dunleith.   He was not to be paid for it, however, even after he had done everything that he had contracted to do with reference to it until it was transported to Greenville, unloaded at appellee's mill, and sawed up.   Then he was to be paid so much per thousand feet.   This, however, was simply a method of arriving at what was sold.   Although paid by the thousand feet, he did not make a sale of the sawed lumber.   He made a sale of the standing timber, agreed to deliver it at the railroad, and the vendee then agreed to have it transported, and saw it up in order to arrive at the amount purchased.

Argued orally by *George Anderson,* for appellant.

WHITFIELD, C. J., delivered the opinion of the court.

The verbal contract in this case between Turner, appellant, and the Planters' Lumber Company, appellee, was not a contract for the purchase of standing timber, but manifestly, a contract for the sale of logs—personal property.   The amended declaration avers that Turner made a contract with Thompson, whereby Thompson sold the plaintiff, for a cash consideration duly paid, all the standing timber on a certain tract of land, containing about two hundred and fifty acres; said timber to be removed from the land by the 1st of January, 1905. The amended declaration then proceeds to aver the contract in question between Turner and the Planters' Lumber Company.   It avers, in the first place, that the appellee had full knowledge of all the terms and provisions of the contract between Turner and Thompson, and with that full knowledge, thereafter, on the 1st day of September, 1904, the appellee made a verbal contract with appellant, whereby the appellee agreed to purchase from the appellant all the logs on the Thompson's tract of land, "to be cut into logs and delivered by plaintiff [Turner] at the siding on the Southern Railway at or near Dunleith, Miss., in said county, to be loaded either by plaintiff [Turner] on the cars at Dunleith, or

by defendant at plaintiff's cost. . . . Said logs to be transported over said road at defendant's cost to its mill and sawed into lumber, for which defendant agreed to pay plaintiff at the rates following, to-wit: $16 per thousand for No. 1 white oak; $11 per thousand for No. 2 white oak; $9 per thousand for No. 2 common white oak; $12 per thousand for No. 1 red oak; $9 per thousand for No. 2 red oak; $7 per thousand for No. 2 common red oak; $16 per thousand for No. 1 ash; $11 per thousand for No. 2 ash; $9 per thousand for common ash; $6.50 per thousand for No. 1 gum; $5 per thousand for No. 2 gum."

This is a contract between the appellant and the appellee, not about timber standing, but about logs cut and delivered at a particular point, Dunleith, to be transported to the appellee's mill, for which logs various prices are to be paid, according to the quality of the logs as set out in the quotation just made from the amended declaration. Most obviously, this is nothing but a contract about personal property—logs—after they are cut and delivered at the place named, and this is the manifest construction put upon the contract by the parties to the contract, which is quite important. *Ganong* v. *Brown,* 88 Miss., 53, 40 South., 556, 117 Am. St. Rep., 731. This contract required the timber to be converted into logs, hauled to Dunleith, and shipped to the vendee. The freight rate was stipulated for in the contract, and the price of the logs, according to the different kinds of trees, also graduated by a schedule. The Supreme Court of Tennessee announced this doctrine in the case of *N. Y. & E. T. Iron Co.* v. *Greene County,* 58 Tenn., (11 Heisk.), 434, and Tennessee holds, as this state does, that a contract for the sale of standing timber must be in writing. See 28 Am. & Eng. Ency. of Law (2d ed.), 540, 541; *Knox* v. *Haralson,* 2 Tenn. Ch., 232. The contract construed in the case of *N. Y. & E. T. Iron Co.* v. *Greene County,* was as follows: "The said Kelley hereby sells to the party of the second part, to-wit, the said Talmadge, all the timber on the land of the said Kelley, except the choice rail trees and large pine trees suitable

for making timber, at the rate of ten cents per cord, to be paid for as fast as used." The last clause of this contract was also held by the court to show that the sale was not of standing trees, but of wood after it had been cut into cordwood. That case is not nearly so strong on its facts as this case to show a sale of personalty. The correspondence between the parties shows, plainly, that they understood it to be a sale of personalty.

The demurrer to the amended declaration is hereby overruled, and the case reversed and remanded.

*Reversed.*